UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | 21-CR-35 (EGS) |
| : | |
| **JACK WADE WHITTON,** : | |
| **Defendant.** : | |

**MOTION FOR EMERGENCY STAY AND
FOR REVIEW AND REVOCATION OF RELEASE ORDER**

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully moves this Court to, first, stay defendant Jack Wade Whitton's release pending trial, and second, review the decision by the Magistrate Judge from the Northern District of Georgia to deny the government's motion for pre-trial detention. In support thereof, the government states the following:

**I.    BACKGROUND**

**A.    Procedural Posture**

On April 1, 2021, defendant Jack "Wade" Whitton was arrested in his home state of Georgia on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge G. Michael Harvey after having been indicted on the following charges: one count of Assaulting, Resisting, or Impeding Certain Officers with a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1), (b); one count of Assaulting, Resisting, or Impeding Certain Officers or Employees, in violation of 18 U.S.C. § 111(a)(1); two counts of Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); one count of Knowingly Entering or Remaining in any Restricted Building or Ground with a Deadly

1

or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1), (b)(1)(A); one count of Disorderly and Disruptive Conduct in any Restricted Building or Ground with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2), (b)(1)(A); one count of Engaging in Physical Violence in any Restricted Building or Ground with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(4), (b)(1)(A); and one count of Violent Entry and Disorderly Conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(F).

On April 1, 2021, during the defendant's initial appearance in the Northern District of Georgia, the government made a motion to detain the defendant without bond pending trial. A detention hearing was held on April 2, 2021, during which the Magistrate Judge Regina D. Cannon denied the government's detention motion and ordered the defendant to be released. Following this, the government orally moved to stay the defendant's release pending an appeal by the government. The magistrate judge granted that request, and has stayed the defendant's release pending appeal.

The government hereby appeals that release order. We also ask this Court to stay the Defendant's release pending a hearing on this appeal. Jurisdiction over this review and appeal lies in this Court, rather than to a judge in the Northern District of Georgia, pursuant to 18 U.S.C. § 3145(a)(1) (when defendant is released by person other than judge of court having original jurisdiction over offense, government's appeal lies to court of original jurisdiction).

  **B.  Statement of Facts**

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with

2

appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session

of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

*Whitton's Assault of Metropolitan Police Department Officers*

On January 6, 2021, during the above-referenced events, Metropolitan Police Department ("MPD") Officers B.M. and A.W. were amongst those MPD officers who were directed to report to the U.S. Capitol to assist the U.S. Capitol Police in their duties to maintain the security of the U.S. Capitol. At approximately 4:20 pm, B.M., A.W. and their colleagues walked through an interior tunnel of the U.S. Capitol Building and assumed a post in an archway that provided access to the building's lower western terrace. Both B.M. and A.W. were wearing a full MPD-issued uniform; A.W. was also wearing a MPD-issued neon jacket. Their approximate location is denoted below by the red circle.



From this archway, alongside other uniformed law enforcement officers, B.M. observed hundreds of individuals gathered outside. Some of these individuals were throwing and swinging various objects at the group of law enforcement officers. In an approximately 90-second time period, B.M. and A.W., along with at least one other officer, Officer C.M. ("C.M.") were brutally assaulted by the rioters, including the defendant, Jack "Wade" Whitton. Seconds before the assault began, a member of the crowd pleaded with officers for help, as his friend was dying after being trampled by the mob in and around the tunnel entrance. B.M. recalled overhearing that someone was being trampled, and stated that officers cleared a space for that individual. Starting at approximately 4:27 pm, A.W. was positioned toward the northern edge of the arch when an unknown individual charged at A.W., grabbing his face, and knocking A.W. to the ground

While A.W. was laying on the ground of the archway, Whitton began striking at B.M. with a crutch. Whitton eventually grabbed B.M. by the head and helmet, pulled him down, overtop A.W., and started to drag him down the steps in a prone position. Whitton was then assisted by others, including co-defendant Jeffrey Sabol, and fully dragged B.M. into the crowd, where co-defendant Peter Stager began to beat B.M. with an American flag on a pole. Law enforcement identified a photograph, seen below, of B.M. as he was dragged in a prone position down the stairs. The individual circled in red was subsequently identified as Whitton.



When asked about the assault, B.M. remembered having his baton grabbed and he was pulled into the crowd. Once in the crowd, B.M. recalled being struck in the helmet multiple times with objects. B.M. advised that he believed the crowd attempted to take him as deep into the crowd as possible. Sometime later, two individuals in the crowd brought B.M. to a closet area on the side of the terrace, and then over to another platform where other MPD officers were located. As a result of the assaults, B.M. sustained minor bruising to his left shoulder and an abrasion to his nose and right cheek.

When asked about the assault, A.W. recalled having his helmet ripped off his head and being stripped of his baton, gas mask, and MPD issued cellular phone. A.W. was dragged into the crowd after Whitton dragged B.M. into the crowd. A.W. recalled that as he was dragged into the mob, he was kicked, struck with poles, and stomped on by several individuals. Additionally, A.W. recalled being maced once his mask was ripped off. At some point during the assault, A.W. was able to retrieve his gas mask and one individual prevented the rioters from further assaulting him. A.W. was able to get on his feet and force his way back to the police line at the archway and into the tunnel area. As a result of the assaults, A.W. suffered a laceration to his head that required two staples to close.

*Video of Whitton's Assaultive Conduct*

A video posted by Storyful to YouTube[1] shows the assault of C.M. and his colleagues. *See* Exhibit 1. Whitton can be seen assaulting MPD officers with a crutch, climbing over a railing in front of the U.S. Capitol lower western terrace archway, then grabbing B.M. and pulling him down the stairs, and holding down B.M. while he is repeatedly struck by other assailants. The images below, obtained from the video, show Whitton as he strikes at B.M. with a crutch, and then as

---

[1] *Available at* https://youtu.be/aEGthdTzedk.

Whitton pulls B.M. down the stairs.





In the photographs and videos of Whitton during the assault, Whitton is seen wearing jeans, a green jacket and boots. Underneath the jacket, Whitton is wearing a red vest and what appears to be a maroon colored, long-sleeved shirt underneath. Whitton has on a red-billed baseball cap with a white back and dark blue front which reads TRUMP 2020 in large letters. On his back, Whitton is wearing a military-style backpack that appears to have a red patch attached.

Body worn camera ("BWC") footage from MPD officers corroborates the Storyful video and shows how Whitton assaulted B.M. with a crutch, and then pulled B.M. out into the crowd.[2]

---

[2] B.M.'s BWC was stolen from him by Whitton's co-defendant, Michael Lopatic, after B.M. was dragged into the crowd. Lopatic disposed of the B.M.'s BWC as he returned to Pennsylvania, so there is no BWC footage from B.M.

A.W.'s BWC footage shows the assault from the vantage point of the ground, as Whitton attacked B.M. while he was standing next to and overtop A.W.  *See* Exhibit 2.  A.W.'s BWC shows Whitton jabbing a crutch in the direction of B.M., and then Whitton kicking at A.W.





A.W.'s BWC shows that Whitton grabbed a hold of B.M.'s hands and/or baton and began pulling B.M. out of the police line, over top A.W.







C.M. was standing directly behind B.M. when Whitton pulled B.M. out over top A.W. and into the crowd. C.M.'s BWC shows Whitton grabbing B.M. by the head and neck as he pulled B.M. into the crowd. *See* Exhibit 3.







*Identification of Whitton*

As of January 15, 2021, unknown Twitter users created the hashtag, #Scallops, to track photographs of Whitton assaulting B.M. In the photographs tagged, Whitton is seen in various stages of dress during the assault. A tip was submitted to the FBI with a video that captured Whitton taking a video of the crowd, using his phone. The tipster described Whitton as wearing a green overcoat, thin red down coat underneath, hat with white back, navy front, red and white letters. A still photo captured from this video is seen in the photographs below.



On January 17, 2021, the FBI received a tip via electronic submission from a confidential source of information ("CS-1") identifying one of the individuals who assaulted B.M. on the stairs of the U.S. Capitol building as Jack Wade Whitton. Whitton, based on the review of law enforcement, closely resembled the subject of several photos on the FBI website. CS-1 was interviewed by an FBI Task Force Officer (TFO) and was shown a set of photos resembling the subject. CS-1 identified Whitton and his girlfriend in pictures posted on the FBI website for Assault on Federal Officer ("AFO") # 130. These pictures were obtained from video footage showing attendees of a "Stop the Steal" rally on January 5, 2021.[3]

---

[3] Available at: https://www.youtube.com/watch?t/319&&v=bEHR7wH5LmM&feature=youtu.be.



CS-1 was also shown a picture of Whitton, alone, taken from a photograph of the lower western terrace of the Capitol on January 6, 2021. CS-1 identified Whitton as the individual in the blue box in the image below.



CS-1 also provided the FBI with a photo of a text message sent to him by mutual acquaintance of him and Whitton. In the text message, Whitton shows a picture of a bloody right hand and then states, "This is from a bad cop....Yea I fed him to the people. Idk his status. And don't care tbh." Below is the image provided by CS-1:



CS-1 stated he had known Whitton since high school and most recently, until early 2020, had attended the same Cross Fit gym with Whitton and his girlfriend.

On February 25, 2021, Law Enforcement interviewed the manager of CrossFit gym (Witness 1). Law Enforcement showed the below pictures to Witness 1, and Witness 1 stated, "That's Wade."



Additional investigation determined that Whitton used his cellphone to text with individuals about his presence at the U.S. Capitol on January 6, 2021 and to send videos from the events of January 6, 2021. Law enforcement obtained copies of additional text messages that Whitton sent to his acquaintances regarding January 6, 2021. In one text message chain, Whitton texted an acquaintance and stated "I'm banned for 3 days from social media so I can't upload any photos or videos or tell anyone what happened." In another messages in the thread, Whitton texted, "The police answered to that …. and bad." Law enforcement also obtained a copy of a 48 second long video that Whitton sent an acquaintance. The video appears to show WHITTON standing on the lower western terrace of the Capitol on January 6, 2021.

### C. Order for Release

On April 1, 2021, during the defendant's initial appearance in the Northern District of Georgia, the government orally moved for the defendant to be detained pending trial. The defendant is eligible for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon]. This is based on a combination of the facts underlying the instant offense, including his assaults on federal officers with a weapon and his obstructive and disruptive conduct at the U.S. Capitol, as well as the defendant's personal characteristics.

During a detention hearing on April 2, 2021, Magistrate Judge Regina D. Cannon denied the government's detention motion. The magistrate judge granted a stay of the defendant's release pending the government's appeal. The government hereby appeals and seeks review of that release order and also asks this Court to interpose its own stay of the order until a hearing on this motion can be held.

### III. ARGUMENT

Title 18, U.S.C. § 3145(a) states:

>**(a) Review of a release order** – If a person is ordered released by a magistrate, …
>
>>(1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .
>
>The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

>[T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[4]

---

[4] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

>Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community*

Here, Whitton is subject to detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon]. The defendant assaulted an officer with a weapon – a crutch – and while doing so, kicked another officer who had been forced to the ground by a separate rioter. The defendant then dragged the officer he assaulted with a crutch into the mob, pulling him by the head, in a prone position, down a flight of steps. The evidence shows that the defendant is a danger to the community. For the reasons stated herein, the government prosecutes this appeal of Magistrate Judge Regina Cannon's decision to release the defendant and seeks a stay of the order from this Court.

To the extent the Court grants this request, the government is and will be prepared to show that the factors under 3142(g) favor detention weigh in favor of the defendant's detention, to wit: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. In this case, there is no condition or combination of conditions that will reasonably assure the safety of the community if the defendant is released, and the government argues he must be held pending disposition in this matter.

For the reasons stated herein, the government prosecutes this appeal of Magistrate Judge Regina Cannon's decision to release the defendant and seeks a stay of the order from this Court.

---

*safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

**WHEREFORE**, the United States respectfully prays this Honorable Court to stay the order releasing Defendant Jack Wade Whitton, to convene a hearing to review the decision to release Jack Wade Whitton and to order instead that he be held without bond pending trial.

Respectfully submitted,

Channing D. Phillips
Acting United States Attorney


 */s/ Colleen D. Kukowski*
Colleen D. Kukowski
DC Bar No. 1012458
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2646
Colleen.Kukowski@usdoj.gov


CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.

 */s/ Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney

Date:  April 4, 2021