UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 21-CR-35 (EGS) |
| | : | |
| JACK WADE WHITTON, | : | |
| Defendant. | : | |

GOVERNMENT'S REPLY TO DEFENDANT'S OPPOSITION TO GOVERNMENT'S
MOTION FOR EMERGENCY STAY AND FOR
REVIEW AND REVOCATION OF RELEASE ORDER

On April 5, 2021, the United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully moved this Court to, first, stay defendant Jack Wade Whitton's release pending trial, and second, review the decision by the Magistrate Judge from the Northern District of Georgia to deny the government's motion for pre-trial detention. The Court granted the government's motion to stay on April 5, 2021 and directed the defendant to file his response by April 8, 2021, and the government to file any reply by April 10, 2021. The government hereby files its reply to the defendant's response.

In support of its reply, the government incorporates the arguments in its previous Motion for Emergency Stay and For Review and Revocation of Release Order filed on April 5, 2021 (ECF No. 35, 21-CR-35 (EGS)) (hereinafter "Government's Emergency Motion").

FACTUAL BACKGROUND

This Court is already familiar with the factual background of this case from the Government's Detention Memorandum. Below, we proffer additional evidence as it relates to the defendant's conduct from January 6, 2021.

1

*Additional Assault of Law Enforcement Officers*

The government continues to investigate the defendant's actions on January 6, 2021, and has located new body worn camera ("BWC") from Metropolitan Police Department ("MPD") officers that shows the defendant engaging in a second round of assaults against law enforcement at the Capitol's lower west terrace.  The video shows Whitton, walking up to the police line at 4:48 pm and kicking at officers in the police line.  *See* Government's Exhibit 1, D.P. BWC Video Clip. A protestor standing between the defendant and the police line yelled at the defendant and others to stop.  The defendant, seconds later, ran back to the line of police officers, kicked them, and appears to state, "you're going to die tonight."

Surveillance footage from U.S. Capitol Police, seen in the screenshots below, corroborates, based on the defendant's visible face and clothing, as well as time stamps, that it was the defendant who kicked officers and stated, "you're going to die tonight," between 4:48 pm and 4:49 pm.





*The Defendant's Text Messages*

Further review of text messages and videos sent by the defendant to other individuals shows the scope of his involvement at the Capitol on January 6, 2021, as well as his state of mind afterward.  In a series of text messages sent to an associate, the defendant stated, "I didn't actually get in the building but everything else I was in the middle of so I can let you know."  He then sent photographs of his own bloodied hand, as discussed in the Government's Emergency Motion. When his associate asked Whitton if he saw any weapons, Whitton replied, "I didn't see weapons. Only organic shit like 2x4 and pots and shit. On our side."  He then stated that he watched "the cops" use weapons such as tear gas and rubber bullets, and stated, "one girl got shot."  Whitton continued, "I saw them carrying her out. Again, we got wild. But not until we got attached [sic] for a couple hours."

Subsequently, on January 8, at 12:52 pm, Whitton texted the associate, "Hey anything you want to know call me anytime. I'm gonna stay of [sic] social for a minute. Later, at 4:10 pm the same day, Whitton stated that he got there "during the second half."  Whitton texted, "When I got

there, they already had the building back and were guarding the doors and entrance ways and fighting people back." Whitton then texted a video that shows the Capitol's lower west terrace in the early evening on January 6, 2021, *see* Government's Exhibit 2, Whitton Cell Phone Video, and stated, "We didn't know until we got back to the hotel people actually got inside. None of the crowd did there did."

*Professional Photographs of Defendant's actions*

Finally, in addition to MPD BWC, surveillance footage, and social media videos, the government has identified numerous photographs of the defendant as he engaged in the assault against Officers B.M. and A.W.









The government also located the photograph below, taken by a photographer with Pacific Press, which appears to be consistent with Whitton leaving the arch at the lower western terrace after he assaulted law enforcement officers for a second time, at approximately 4:48 – 4:49 p.m.



**ARGUMENT**

The defendant is eligible for detention pursuant to § 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon] of the federal bail statute.  There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, the government respectfully submits that there remain no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community or the defendant's return to the Court.

### 1.  Nature and Circumstances of the Offense Charged

During the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol.  The defendant is among those who assaulted *multiple* law enforcement officers.  As Chief Judge Howell stated, "Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot, thereby encouraging others to engage in such conduct. These factors measure the extent of a defendant's disregard for the institutions of government and the rule of law, qualities that bear on both the seriousness of the offense conduct and the ultimate inquiry of whether a defendant will comply with conditions of release meant to ensure the safety of the community." *United States v. William Chrestman*, 21-mj-218 (ZMF), ECF No. 23, at 16.  Additionally, in the decision in *United States v. Munchel*, No. 21-3010, 2021 WL

1149196, at *8 (D.C. Cir. Mar. 26, 2021), the D.C. Circuit held, "In our view, those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way."

The defendant was involved in some of the most violent assaults on law enforcement officers that occurred on January 6, 2021.  He is facing charges of violating 18 U.S.C. 111(a)(1) and (b); 111(a)(1), and 18 U.S.C. 231(a)(3), which are serious felony offenses.  His actions – climbing over a railing while armed with a crutch - started a melee that resulted in two officers being dragged out of a police line and into a violent mob, and at a minimum, a third officer being assaulted while that officer attempted to rescue his colleagues.  Specifically, it was the defendant who grabbed an officer by the head and neck and pulled him, in a prone position, out over top of another officer and face down into the violent crowd.  Unlike others, who joined in the assaults after they began, the defendant was the instigator.  The two officers that were dragged into the crowd could have easily been seriously injured, if not killed, because of the defendant's actions. Officer A.W. did in fact have to receive staples to his head to close the laceration he sustained during the cumulative assaults he endured on January 6, 2021.  Moreover, the defendant's assault of Officers A.W. and B.M. interfered with officers' ability to come to the aid of a protestor who had been trampled by the crowd.

Moreover, the defendant was not content with just assaulting Officers B.M. and A.W.; newly discovered evidence indicates that he assaulted the police line a second time, approximately 20 minutes after he assaulted Offices B.M. and A.W.  Government's Exhibit 1 shows the defendant kicking at officers and stating, "You're going to die tonight." This statement, combined with the defendant's text messages in which he boasted that he "fed" an officer to "the people" and that he

does not know or care about the officer's status further demonstrates his callous disregard for the law enforcement officers' lives.  While the defense asserts in its opposition that the defendant has not espoused violence against law enforcement officials on social media or in any other format before or after January 6, 2021, it should also be noted that the defendant explicitly told his associates that he was avoiding social media.  After bragging about how he "got wild," the defendant texted an associate, "Hey anything you want to know call me anytime. I'm gonna stay of [sic] social for a minute."  Thus, the defendant's lack of statements on social media are not an indicator that he is not dangerous – the lack of commentary on social media is due to the defendant's decision to lay low for a period of time after his criminal actions.

Accordingly, consistent with *Chrestman* and *Munchel*, the nature and circumstances of the defendant's offenses weigh strongly in favor of the defendant's pre-trial detention.

## 2.  Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. As discussed above and in the Government's Emergency Motion, the evidence against the defendant includes BWC from numerous different officers and social media video footage. The video evidence is objective and unwavering. The BWC corroborates the assaults seen in the video posted by Storyful, and shows precisely how the defendant began assailing an officer with a crutch, climbed over a railing, and dragged that officer out into the crowd (while kicking another officer in the process).  Independent, professional photographers captured the defendant's unlawful conduct in their photographs from the day.  And, BWC and surveillance footage shows that the defendant participated in a second wave of assaults on law enforcement officers approximately 20 minutes after he assaulted Officers B.M. and A.W.

In addition, the defendant's own words and photos and videos corroborate his involvement

in the assaults.  As seen above and in the  Government's Emergency Motion, the defendant acknowledged that he was at the Capitol on January 6, acknowledged that he "fed" an officer to the crowd, and provided  video footage that shows the Capitol's lower west terrace in the early evening of January 6, 2021.  The evidence against this defendant is overwhelmingly strong, and accordingly, the weight of the evidence weighs heavily in favor of detention.

### 3.  Defendant's History and Characteristics

The government recognizes that many letters of support have been filed on the defendant's behalf and that his criminal history is relatively limited.  This limited history nevertheless shows that the defendant struggles to comply with government orders and directives.[1]  Most importantly, the defendant's actions, as demonstrated by his apparent willingness to participate in multiple violent assaults against law enforcement, weigh against his release.  The defendant has shown a resourcefulness in using weapons as a part of his violent conduct.  Indeed, in the text messages he sent, the defendant referred to how the rioters used "organic" weapons.  He himself used a crutch to assault Officer B.M.

While the defense submits that the defendant's offer to speak with law enforcement – an offer that was conditioned on the government providing the defendant with a proffer letter – speaks to his lack of dangerousness, the government submits that this does nothing to mitigate the violence with which he acted on January 6th. Similarly,  the fact that the government chose to continue investigating and building evidence of the defendant's conduct, rather than jumping to make an immediate arrest,  should not affect the detention analysis or the Court's determination of the defendant's dangerousness.  *United States v. Little*, 235 F. Supp.3d 272, 279 (D.D.C. 2017) ("The Government is permitted to make its own determinations on when to indict a defendant and without

---

[1] In September 2018 the defendant pleaded guilty to Criminal Trespass and in October 2020 the defendant pleaded guilty to Driving While License Suspended or Revoked and Driving Without a Valid License.

evidence of abuse or some facts to support that the delay was due to a lack of danger, the delay does not affect the detention analysis").[2]

Finally, the defendant's own words demonstrate the danger he poses, and weigh in favor of his detention. BWC from Government's Exhibit 1 shows the defendant stating, "You are going to die tonight." The context of this statement – which was not made as a conditional threat, but rather was made as the defendant was kicking at law enforcement officers – shows his state of mind on January 6th, 2021. This statement, coupled the defendant's lack of remorse and respect for the life of law enforcement officers, as seen in his text messages, is a red flag of his continuing dangerousness. If released, the defendant would have even more opportunities to unleash violence against those in law enforcement and the community.

## 4. Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of the defendant's detention. The charged offenses involve assaultive conduct aimed to stop the functioning of the United States government, specifically to derail the certification of the electoral process, a cornerstone of our democracy. The defendant used physical force and a weapon against separate officers who were dragged into a violent mob. And he did so at a time that individuals in a crowd were calling for the police to help them tend to a protestor who was crushed by the mob. He returned to the same police line and assaulted additional officers twenty minutes later and told them they were going to die. The danger the defendant poses cannot be understated.

---

[2] In *Little*, the defendant was involved in a vehicular collision on October 11, 2016, which began the government's investigation; he was then indicted on Dec. 7, 2016 and arrested on January 11, 2017. *Little*, 235 F. Supp.3d at 279. The Court in Little rejected the defense's arguments that the purported delay in the defendant's arrest demonstrated that the government did not believe that the defendant was a flight risk or danger to the community.

## CONCLUSION

Here, Whitton is subject to detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon].  The defendant assaulted an officer with a weapon – a crutch – and while doing so, kicked another officer who had been forced to the ground by a separate rioter.  The defendant then dragged the officer he assaulted with a crutch into the mob, pulling him by the head, in a prone position, down a flight of steps.  The evidence shows that the defendant is a danger to the community.  For the reasons stated herein, the government prosecutes this appeal of Magistrate Judge Regina Cannon's decision to release the defendant and seeks a stay of the order from this Court.

**WHEREFORE**, the United States respectfully prays this Honorable Court to revoke the order releasing Defendant Jack Wade Whitton and to order instead that he be held without bond pending trial.

Respectfully submitted,

Channing D. Phillips
Acting United States Attorney


 /s/ Colleen D. Kukowski
Colleen D. Kukowski
DC Bar No. 1012458
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2646
Colleen.Kukowski@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the Government's Motion for Pretrial Detention was served on all counsel of record via the Court's electronic filing service.


 */s/ Colleen D. Kukowski*
COLLEEN D. KUKOWSKI
Assistant United States Attorney


Date:  April 10, 2021