**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

JACK WADE WHITTON,

               Defendant.

Crim. Action No. 21-35-5 (EGS)

<u>**MEMORANDUM OPINION**</u>

Defendant Jack Wade Whitton ("Mr. Whitton") has been charged in a federal indictment with eight serious misdemeanor and felony offenses arising from his participation in the events at the U.S. Capitol on January 6, 2021. *See* Superseding Indictment, ECF No. 23. He was arrested on these charges on April 1, 2021, and at his initial appearance before Magistrate Judge Regina D. Cannon on the United States District Court for the Northern District of Georgia, the government moved for Mr. Whitton to be detained without bond pending trial. *See* Rule 5(c)(3) Documents, ECF No. 38 at 14-16.[1] On April 2, 2021, after holding a detention hearing, Magistrate Judge Cannon denied the government's motion and ordered Mr. Whitton released. *See id*. at 18-20. Upon the government's oral request, Magistrate Judge

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Cannon granted a stay of the release pending the government's appeal, and on April 5, 2021, the government filed its pending motion in this Court, seeking: (1) the stay of Mr. Whitton's release to remain in place while this Court reviewed Magistrate Judge Cannon's release order; and (2) this Court's review and revocation of the release order pursuant to 18 U.S.C. § 3145(a)(1). *See* Gov't's Mot. for Emergency Stay and Review and Revocation of Release Order ("Gov't's Mot."), ECF No. 35. The Court granted the government's request for an emergency stay. *See* Min. Order (Apr. 5, 2021). Now pending before the Court is the government's request for review and revocation of Magistrate Judge Cannon's release order. Gov't's Mot., ECF No. 35. The Court held a hearing on the government's motion on April 12, 2021. *See* Min. Entry (Apr. 12, 2021).

Upon careful consideration of the motion, opposition, and reply thereto, the arguments set forth at the April 12, 2021 hearing, the applicable law, and the entire record herein, the government's motion is **GRANTED.**

## I. Background

Mr. Whitton and four co-defendants are alleged to have forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with Metropolitan Police Department ("MPD") officers while they were attempting to help the U.S. Capitol Police maintain the security of the U.S. Capitol on January 6, 2021.

2

*See* Superseding Indictment, ECF No. 23 at 1-4. The sixteen-count superseding indictment, filed March 12, 2021, charges Mr. Whitton with the following offenses: (1) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (2) Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1); (3) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (4) a second count of Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (5) Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A); (6) Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A); (7) Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A); and (8) Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F). *Id.* at 2, 4, 5, 6, 7, 9.

The Court sets out below the evidence proffered by the government in support of its motion[2] as well as a brief overview

---

[2] At a detention hearing, the government may present evidence by way of a proffer. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

of the procedural history of this case.

**A. Mr. Whitton's Conduct on January 6, 2021**

In the afternoon of January 6, 2021, Mr. Whitton was present at the U.S. Capitol when protestors stormed the building and attacked U.S. Capitol Police and MPD officers during the riot that disrupted the joint session of the U.S. Congress that had convened to certify the vote count of the Electoral College of the 2020 Presidential Election. Gov't's Mot., ECF No. 35 at 2-3. At around 2:20 p.m., members of the U.S. House of Representatives and U.S. Senate, including the Vice President of the United States, were forced to evacuate the chambers of Congress after rioters had forced entry into the building. *Id.* at 3-4.

While some rioters entered the U.S. Capitol interior, hundreds of other rioters remained gathered around the perimeter of the building into the late afternoon. At approximately 4:20 p.m., MPD officers assumed a post in an archway at the access point of the U.S. Capitol's lower western terrace to maintain the security of the building. *Id.* at 4. Among the MPD officers at that post were Officer A.W., Officer B.M., and Officer C.M. *Id.* at 4-5. Shortly after assuming the post, all three officers were "brutally" assaulted by members of the mob who were gathered outside of the U.S. Capitol, including Mr. Whitton. *Id.* Video footage provided by the government displays the violent

4

attacks that left the officers wounded and in need of medical care. *See* Exs. 1, 2, and 3 to Gov't's Mot. As a result of the attacks, Officer A.W. sustained a laceration that caused him to bleed from the head and required staples to close, and Officer B.M. sustained an abrasion to his nose and right cheek and minor bruising to his left shoulder. Gov't's Mot., ECF No. 35 at 6.

The government alleges Mr. Whitton participated in, and in fact instigated, the violent assaults of Officer A.W. and Officer B.M. The government proffers that at approximately 4:27 p.m., an unknown individual charged at Officer A.W., who was posted in the lower western terrace archway, grabbed his face, and knocked him to the ground. *Id.* at 5. As Officer A.W. lay on the ground, Mr. Whitton began striking at the group of officers with a metal crutch, and at Officer B.M. in particular. *Id.* As the MPD officers attempted to defend themselves against the members of the mob who were converging on them with various weapons, Mr. Whitton climbed over a railing, kicked at Officer A.W. while standing overtop of him, grabbed Officer B.M. by the head and helmet, pulled him over Officer A.W., and dragged him face-first down the U.S. Capitol steps into the violent mob with the assistance of co-defendant Jeffrey Sabol. *Id.* at 5, 6 (citing Storyful[3] Video Footage, Ex. 1 to Gov't's Mot.), 8

---

[3] According to its website, Storyful is a "news and intelligence agency" owned by News Corp. that was founded as "the first

(citing Officer A.W.'s Body Worn Camera ("BWC") Footage, Ex. 2
to Gov't's Mot.), 10 (citing Officer C.M.'s BWC Footage, Ex. 3
to Gov't's Mot.). Once Mr. Whitton and others had pulled Officer
B.M. into the crowd, and as Officer B.M. lay on his stomach
surrounded by rioters, co-defendant Peter Stager began to beat
Officer B.M. with an American flag pole, and other rioters
repeatedly struck him with different objects. *Id*. Officer B.M.
recalls being struck in the helmet multiple times with objects,
and he believes the rioters had attempted to take him as deep
into the crowd as possible. *Id*. at 6. Similarly, Officer A.W.
recalls being dragged into the crowd after Mr. Whitton first
pulled Officer B.M. down the steps. *Id.* Rioters ripped off
Officer A.W.'s helmet; stripped him of his police baton, MPD-
issued cellular phone, and gas mask; maced him; kicked him;
struck him with poles; and stomped on him. *Id.*

Approximately twenty minutes after the attacks on Officers
A.W. and B.M., the government alleges Mr. Whitton engaged in
another round of assaults against MPD officers. *See* Gov't's
Reply, ECF No. 48 at 2. According to the government, BWC footage
and U.S. Capitol surveillance footage confirms that at around
4:48 p.m., Mr. Whitton walked up to a police line, was

---

social media newswire . . . to break the news faster and utilize
social content to add context to reporting." *See About Storyful*,
Storyful, https://storyful.com/about/ (last visited Apr. 20,
2021).

confronted by a protestor who told him and others to stop,
retreated, but then ran back to the line of officers, kicked
them, and yelled "you're going to die tonight." *Id.*

**B. The Government's Investigation of Mr. Whitton**

On January 17, 2021, a confidential source ("CS-1"), who
has known Mr. Whitton since high school and attended the same
CrossFit gym with Mr. Whitton and his girlfriend, submitted a
tip to the FBI, identifying Mr. Whitton as one of the
individuals who attacked Officer B.M. on the lower western
terrace of the U.S. Capitol on January 6, 2021. Gov't's Mot.,
ECF No. 35 at 12, 14. The FBI interviewed CS-1, who identified
Mr. Whitton and his girlfriend in photographs obtained from
video footage showing attendees of a "Stop the Steal" rally the
day before the storming of the U.S. Capitol. *Id.* at 13. CS-1
also identified Mr. Whitton in a photograph of the lower western
terrace of the U.S. Capitol on January 6, 2021. *Id.*

On February 25, 2021, law enforcement interviewed the
manager of the CrossFit gym, who also identified Mr. Whitton in
one of the photographs from the "Stop the Steal" rally on
January 5, 2021, and a photograph from the U.S. Capitol on
January 6, 2021. *Id.* at 14.

The government also obtained numerous text messages between
Mr. Whitton and acquaintances regarding the events of January 6.
From CS-1, the FBI obtained a photograph of a text message that

Mr. Whitton sent to a mutual acquaintance that included a photo
of a bloody and bruised right hand and these messages: (1) "This
is from a bad cop" and (2) "Yea I fed him to the people. Idk his
status. And don't care tbh." *Id.* at 13-14. After additional
investigation revealed that Mr. Whitton had used his cellphone
to text with other individuals about the events of January 6,
law enforcement obtained text messages in which he stated as
follows: (1) "I'm banned for 3 days from social media so I can't
upload any photos or videos or tell anyone what happened," *Id.*
at 15; (2) "The police answered to that . . . and bad," *id.;* (3)
"I didn't actually get in the building but everything else I was
in the middle of so I can let you know," Gov't's Reply, ECF No.
48 at 3; (4) "I didn't see weapons. Only organic sh** like 2x4
and pots and sh**. On our side," *id.;* (5) he watched "the cops"
use weapons such as tear gas and rubber bullets, "one girl got
shot," and "I saw them carrying her out. Again, we got wild. But
not until we got attached [sic] for a couple hours," *id.;* (6)
"Hey anything you want to know call me anytime. I'm gonna stay
of [sic] social media for a minute," *id.;* (7) "When I got there,
they already had the building back and were guarding the doors
and entrance ways and fighting people back," and "We didn't know
until we got back to the hotel people actually go inside. None
of the crowd did there did," *id.*at 4.

**C. Procedural Background**

On April 1, 2021, Mr. Whitton was arrested in his home
State of Georgia for the charges in the Superseding Indictment.
Arrest Warrant, ECF No. 33. Mr. Whitton had an initial
appearance in the United States District Court for the Northern
District of Georgia before Magistrate Judge Cannon, at which
time the government moved for Mr. Whitton to be detained pending
trial. *See* Rule 5(c)(3) Documents, ECF No. 38 at 14-16.
Magistrate Judge Cannon held a detention hearing the next day,
on April 2, 2021, and she ordered Mr. Whitton released. *See id.*
at 18-20. The government thereafter made an oral motion to stay
Mr. Whitton's release pending its appeal of the release order.
*See* Gov't's Mot., ECF No. 35 at 2. Magistrate Judge Cannon
granted that request, staying Mr. Whitton's release pending the
government's appeal. *Id.*

On April 5, 2021, the government filed its pending motion
in this Court, seeking: (1) the stay of Mr. Whitton's release to
remain in place while this Court reviewed Magistrate Judge
Cannon's release order; and (2) this Court's review and
revocation of the release order pursuant to 18 U.S.C. §
3145(a)(1). *See* Gov't's Mot., ECF No. 35 at 2. That same day,
the Court granted the government's request for an emergency stay
of the order releasing Mr. Whitton pretrial. *See* Min. Order
(Apr. 5, 2021). On the Court's order, Mr. Whitton filed a

response to the government's motion for revocation of the release order on April 8, 2021, and the government filed a reply on April 10, 2021.

## II. Legal Standard

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, provides that a hearing shall be held to determine whether a defendant should be detained pretrial upon a motion by the government if the defendant is charged with an offense falling in one of five enumerated categories. 18 U.S.C. § 3142(f)(1)(A)-(E). As relevant here, a detention hearing shall be held pursuant to Section 3142(f)(1)(A) if a defendant is charged with a "crime of violence," or pursuant to Section 3142(f)(1)(E) if a defendant is charged with any felony that is not otherwise a crime of violence that involves the possession or use of any dangerous weapon. 18 U.S.C. § 3142(f).

If a detention hearing is held pursuant to Section 3142(f), a judicial officer may detain a defendant pending trial if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id*. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Munchel*, No. 21-3010, 2021 WL 1149196, at *4 (D.C. Cir. Mar. 26, 2021) (quoting *United*

*States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019)).
When the basis for pretrial detention is the defendant's danger
to the community, the government is required to demonstrate the
appropriateness of detention pursuant to subsection (e) by clear
and convincing evidence. 18 U.S.C. § 3142(f).

Certain conditions and charged offenses trigger a
rebuttable presumption that no condition or combination of
conditions will reasonably assure the safety of any person and
the community. 18 U.S.C. § 3142(e)(2)-(3) (providing that a
rebuttable presumption arises pursuant to subsection (e)(2) if
the defendant committed a "crime of violence" while on release
pending trial for another offense and not more than five years
after the date of conviction or the release of the person from
imprisonment for that offense, or pursuant to subsection (e)(3)
if there is probable cause to believe the defendant committed
one of a subset of offenses listed in that section).[4]

In cases that do not involve the conditions and charged
offenses that trigger a rebuttable presumption of detention, the

---

[4] The subset of offenses triggering a rebuttable presumption
under subsection (e)(3) include the following: "(A) an offense
for which a maximum term of imprisonment of ten years or more is
prescribed in the Controlled Substances Act . . . the Controlled
Substances Import and Export Act . . . , or chapter 705 of title
46; (B) an offense under section 924(c), 956(a), or 2332b of
this title; (C) an offense listed in section 2332b(g)(5)(B) of
title 18, United States Code, for which a maximum term of
imprisonment of 10 years or more is prescribed; (D) an offense
under chapter 77 of this title for which a maximum term of

11

Court considers the following factors to determine whether
detention is required to ensure the appearance of the person and
the safety of any other person and the community:

1. The nature and circumstances of the offense
   charged, including whether the offense is a
   crime of violence;
2. The weight of the evidence;
3. The history and characteristics of the
   person, including
   A. The person's character, physical
      and mental condition, family
      ties, employment, financial
      resources, length of residence in
      the community, community ties,
      past conduct, history relating to
      drug or alcohol abuse, criminal
      history, and record concerning
      appearance at court proceedings;
      and
   B. Whether, at the time of the
      current offense or arrest, the
      person was on probation, on
      parole, or on other release; and
4. The nature and seriousness of the danger to
   any person or the community that would be
   posed by the person's release.

18 U.S.C. § 3142(g); *see also Munchel*, 2021 WL 1149196, at *4.

   If a magistrate judge orders a defendant released, the
government "may file, with the court having original
jurisdiction over the offense, a motion for revocation or
amendment of the order." 18 U.S.C. § 3145(a). Although the Court

───────────────

imprisonment of 20 years or more is prescribed; or (E) an
offense involving a minor victim under section 1201, 1591, 2241,
2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2),
2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4),
2260, 2421, 2422, 2423, or 2425 of this title." 18 U.S.C. §
3142(e)(3)(A)-(E).

of Appeals for the District of Columbia Circuit (the "D.C.
Circuit") has not squarely decided the issue of what standard of
review a district court should apply to review of a magistrate's
detention or release order, *see Munchel*, 2021 WL 1149196, at *5;
courts in this district have held that such detention decisions
are reviewed *de novo*. *See United States v. Hunt*, 240 F. Supp. 3d
128, 132-33 (D.D.C. 2017); *United States v. Chrestman*, No. 21-
mj-218 (ZMF), 2021 WL 765662, at *5-*6 (D.D.C. Feb. 26, 2021).
Accordingly, the Court will review the decision to detain Mr.
Whitton *de novo*.

### III. Analysis

#### A. Mr. Whitton is Eligible for Pretrial Detention Pursuant to 18 U.S.C. § 3142(f)(1)(A)

As a threshold matter, the government correctly argues, and
Mr. Whitton does not dispute, that Mr. Whitton is eligible for
pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(A). *See*
Gov't's Mot., ECF No. 35 at 15, 17. Under the Bail Reform Act,
unless a defendant poses a serious risk of flight or of
attempting to obstruct justice, he is only eligible for pretrial
detention if he is charged with an offense listed in one of the
five enumerated categories of Section 3142(f)(1)—*i.e.*, "the most
serious" crimes. *See* 18 U.S.C. § 3142(f)(1)(A)-(B), (f)(2);
*United States v. Singleton*, 182 F.3d 7, 13 (D.C. Cir. 1999)
("Congress limited pretrial detention of persons who are

presumed innocent to a subset of defendants charged with crimes that are 'the most serious' compared to other federal offenses." (quoting *United States v. Salerno*, 481 U.S. 739, 747 (1987))).

Mr. Whitton is charged under 18 U.S.C. §§ 111(a) and (b) with Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon. *See* Superseding Indictment, ECF No. 23 at 2. For the reasons the Court recently set out in its Memorandum Opinion regarding Mr. Sabol's request for pretrial release, a defendant charged under 18 U.S.C. §§ 111(a)(1) and (b) is charged with a crime of violence. *See* Mem. Op., ECF No. 56 at 15-20 (citing *Gray v. United States*, 980 F.3d 264, 266-67 (2d Cir. 2020); *United States v. Kendall*, 876 F.3d 1264, 1270 (10th Cir. 2017); *United States v. Taylor*, 848 F.3d 476, 492-493 (1st Cir. 2017); *United States v. Juvenile Female*, 566 F.3d 943, 948 (9th Cir. 2009)). Accordingly, because using a deadly or dangerous weapon while assaulting a federal officer (or, in this case, an MPD officer assisting a federal officer) is a crime of violence, Mr. Whitton is eligible for pretrial detention under 18 U.S.C. § 3142(f)(1)(A).[5]

_____

[5] The government also argues that Mr. Whitton is eligible for detention pursuant to 18 U.S.C. § 3142(f)(1)(E), which permits detention for a defendant charged with "any felony that is not otherwise a crime of violence that involves the possession or use of . . . any other dangerous weapon." The Court need not address Section 3142(f)(1)(E) as a basis for Mr. Whitton's eligibility for pretrial detention because the Court finds that

**B. No Condition or Combination of Conditions Will Reasonably Assure the Safety of Any Other Person and the Community**

Having found that Mr. Whitton is eligible for pretrial detention, the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of [Mr. Whitton] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The government does not argue that Mr. Whitton is a flight risk, so the Court will focus its inquiry on whether Mr. Whitton is a danger to any other person or the community. For this inquiry, the Court "must identify an articulable threat posed by the defendant to an individual or the community," though "[t]he threat need not be of physical violence, and may extend to 'non-physical harms such as corrupting a union.'" *Munchel*, 2021 WL 1149196, at *7 (quoting *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)). "The threat must also be considered in context," and "[t]he inquiry is factbound." *Id.* (citing *United States v. Tortora*, 922 F.2d 880, 888 (1st Cir. 1990)). Mr. Whitton and the government agree that in determining whether Mr. Whitton is a danger to the community, the Court considers the 18 U.S.C. § 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the

---

he is eligible for detention pursuant to 18 U.S.C. § 3142(f)(1)(A) for a "crime of violence."

history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g); *see* Gov't's Mot., ECF No. 35 at 17; Def.'s Opp'n, ECF No. 45 at 2-3.

In consideration of these requisite factors, as set forth below, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will reasonably assure the safety of the community. Accordingly, the Court orders that Mr. Whitton be detained pending trial. *See* 18 U.S.C. § 3142(e)(1).

### 1. Nature and Circumstances of the Offense

The first factor the Court must consider is the nature and circumstances of the offense charged, "including whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1).

The government asks the Court to weigh the serious offenses with which Mr. Whitton is charged as well as the violent conduct underlying those offenses when determining whether he presents a danger to the community. The government emphasizes that during the "siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, and pepper spray who were targeting the officers protecting the Capitol." Gov't's Reply, ECF No. 48 at 7. The government asserts that Mr.

16

Whitton "was involved in some of the most violent assaults on
law enforcement that occurred" that day, and for his active
participation in the riots and the attacks on MPD officers, he
"is facing charges of violating 18 U.S.C. 111(a)(1) and (b);
111(a)(1); and 18 U.S.C. 231(a)(3), which are serious felony
offenses." *Id.* at 8. In fact, the government contends, Mr.
Whitton was not just a participant, "he himself was the
instigator" of the attacks on the MPD officers at the U.S.
Capitol's lower western terrace at around 4:30 p.m. on January
6, 2021. Hr'g Tr., ECF No. 52 at 12:2-12. "[W]hen he climbed
over that railing with the metal crutch in his hand, [that] is
very much the reason why all these assaults were able to happen,
and happened in quick succession." *Id.* The government also
discovered additional evidence that places Mr. Whitton at a
second confrontation with law enforcement about twenty minutes
after the first series of attacks for which Mr. Whitton has been
charged. Gov't's Reply, ECF No. 48 at 2-3. The government argues
the first violent series of attacks and the second confrontation
with law enforcement, combined with text message evidence that
shows "the defendant's continued state of mind and continued
callous disregard for officers' lives, is why he should be
detained, as he poses a clear threat and danger to the
community." Hr'g Tr., ECF No. 52 at 4:9-23.

Mr. Whitton acknowledges that the charges against him "are serious," but he argues that "they are not continuing in nature or even likely to be repeated in the future." Def.'s Opp'n, ECF No. 45 at 3. Mr. Whitton frames the issue as whether "the very serious allegations against [him] render him ineligible for a bond just in and of themselves, because there's nothing in Mr. Whitton's background or history to suggest that he's presently, today, . . . a danger to the community or to any individual." Hr'g Tr., ECF No. 52 at 21:19-25. He points out that there is no evidence that he was "part of any militia or militant group intent on overthrowing the government or harming government officials," or that he "espoused violence against law enforcement officials on social media, or in any other format, either before January 6, 2021 or afterwards." Def.'s Opp'n, ECF No. 45 at 3. He also notes, with respect to the events of January 6, 2021, that he did not carry any type of tactical gear like helmets, body armor or zip ties. Hr'g Tr., ECF No. 52 at 22:7-13.

Mr. Whitton's arguments concerning the weighing of the nature of the offense versus his history and characteristics are best suited for consideration under the last 3142(g) factor. *See* 18 U.S.C. § 3142(g)(4) ("the nature and seriousness of the danger to any person or the community that would be posed by the person's release"). The Court discusses those arguments *infra*

Section III, Part B.4. Here, the Court considers just the "nature and circumstances of the offense charged," *see id.* § 3142(g)(1), and easily finds that this factor weighs against Mr. Whitton's release pending trial.

On January 6, 2021, while the U.S. Congress was convened at the seat of our nation's democracy, Mr. Whitton and "hundreds of others took over the United States Capitol; caused the Vice President of the United States, the Congress, and their staffs to flee the Senate and House Chambers; engaged in violent attacks on law enforcement officers charged with protecting the Capitol; and delayed the solemn process of certifying a presidential election." *United States v. Cua*, No. 21-107 (RDM), 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021). As Judge Randolph Moss articulated, "[t]his was a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself." *Id.* And as the D.C. Circuit explained, "[i]t cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community." *See Munchel*, 2021 WL 1149196, at *8.

Nonetheless, and despite the serious and unsettling nature of the events that transpired at the U.S. Capitol on January 6, 2021, the D.C. Circuit has made clear that detention is not

appropriate in all cases involving defendants who participated
in the events ("Capitol Riot defendants"). *See Munchel*, 2021 WL
1149196, at *8. Accordingly, the Court considers the nature and
circumstances of the specific offenses and underlying conduct
with which each defendant is charged. *Chrestman*, 2021 WL 765662,
at *7. The Court must "adequately demonstrate that it considered
whether [Mr. Whitton] pose[s] an articulable threat to the
community in view of [his] conduct on January 6, and the
particular circumstances of January 6." *Munchel*, 2021 WL
1149196, at *8. To aid in this consideration, Chief Judge Howell
has articulated "guideposts" for assessing "the comparative
culpability of a given defendant in relation to fellow rioters."
*Chrestman*, 2021 WL 765662, at *7-*8. The Court finds these
guideposts persuasive for the purpose of differentiating among
Capitol Riot defendants: (1) whether the defendant has been
charged with felony or misdemeanor offenses; (2) the extent of
the defendant's prior planning; (3) whether the defendant used
or carried a dangerous weapon; (4) evidence of coordination with
other protestors before, during, or after the riot; (5) whether
the defendant assumed a formal or de facto leadership role in
the events of January 6, 2021, for example "by encouraging other
rioters' misconduct" such as "to confront law enforcement"; and
(6) the defendant's "words and movements during the riot"—*e.g.*,
whether the defendant "remained only on the grounds surrounding

the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others." *Id.* These factors, "[t]aken together, as applied to a given defendant, . . . are probative of 'the nature and circumstances of the offense charged,' 18 U.S.C. § 3142(g)(1), and, in turn, of the danger posed by the defendant," as relevant to the fourth Section 3142(g) factor. *Id.* at *9.

At least four of the six *Chrestman* factors strongly support a finding that Mr. Whitton's comparative culpability in relation to his fellow rioters is high. *First*, Mr. Whitton has been charged with multiple felonies. *See* Superseding Indictment, ECF No. 23. "Felony charges are by definition more serious than misdemeanor charges; the nature of a felony offense is therefore substantially more likely to weigh in favor of pretrial detention than the nature of a misdemeanor offense." *Chrestman*, 2021 WL 765662, at *7. Moreover, Section 3142(g)(1) specifically directs the Court to consider whether a defendant has been charged with a crime of violence, and at least one of the charged felonies—using a deadly weapon while assaulting an MPD officer who was assisting federal officials protect the U.S. Capitol—is a crime of violence. *See supra* Section III, Part A.

*Second*, Mr. Whitton carried and used a metal crutch as a dangerous weapon during the riot. It is not clear where Mr. Whitton acquired the crutch, and he may not have come to the

U.S. Capitol armed with the crutch as a weapon, but as he explained in a text message to an acquaintance, rioters improvised by using "organic" weapons during the attacks. *See* Gov't's Reply, ECF No. 48 at 15. His willingness to seek out an "organic" weapon, which video evidence shows he used in a chilling assault on MPD officers, speaks to the gravity of the offenses with which he has been charged, as well as the danger he poses not just to his community, but to the American public as a whole. *See Chrestman*, 2021 WL 765662, at *8.

*Third*, in the Court's view, Mr. Whitton assumed a de facto leadership role in the assaults on MPD officers on the lower western terrace. As the government correctly points out, Mr. Whitton was "unlike others, who joined in the assaults after they began." Gov't's Reply, ECF No. 48 at 8. Instead, he was the instigator. *Id.; see* Storyful Video, Ex. 1 Gov't's Mot. (showing Mr. Whitton—wearing a green jacket, grey backpack, and white hat, and wielding a metal crutch—jumped a barrier at 00:08-00:10 and then dragged Officer B.M. from the archway and exposed him to the crowd on the steps at 00:15-00:22). He led the assault on Officer B.M., as he was the first to pull the officer away from his post and into the crowd. *Id.* In the seconds that followed, the situation on the lower western terrace went from dangerous to potentially life-threatening for the MPD Officers: Officer B.M. sustained beatings from the angry mob surrounding him on

the Capitol steps; Officer A.W. was then also dragged into the crowd, following the lead Mr. Whitton had set in dragging Officer B.M. down the steps; and Officer C.M. was also attacked as he tried to assist the other officers. *Id.* at 00:14-00:47. Mr. Whitton bragged in a text message to an acquaintance that he "fed [Officer B.M.] to the people." Gov't's Mot., ECF No. 35 at 13-14. By leading his co-defendants in dragging Officer B.M. into the violent and angry mob, he effectively "urg[ed] rioters . . . to confront law enforcement," which undoubtedly "inspired further criminal conduct on the part of others." *See Chrestman*, 2021 WL 765662, at *8. This action "enhances the defendant's responsibility for the destabilizing events of January 6 and thus the seriousness of his conduct." *Id.*

*Fourth*, Mr. Whitton's words and movements during the riot indicate he acted deliberately and dangerously. Ample video, photographic, and text message evidence proffered by the government confirms Mr. Whitton's violent acts, which are among some of the most violent acts that took place that day according to the government. *See* Gov't's Reply, ECF No. 48 at 8. For purposes of evaluating a Capitol riot defendant's dangerousness, the D.C. Circuit has said that "those [rioters] who actually assaulted police officers and . . . those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence

or entered the Capitol after others cleared the way." *Munchel*,
2021 WL 1149196, at *8. "Grave concerns" are implicated by Mr.
Whitton's conduct, which included (1) using a metal crutch to
strike MPD officers, *see* Storyful Video, Ex. 1 to Gov't's Mot.
at 00:01-00:07; Officer A.W. BWC Footage, Ex. 2 to Gov't's Mot.
at 00:30-00:33; (2) kicking Officer A.W. while he was lying on
the ground, *see* Officer A.W. BWC Footage, Ex. 2 to Gov't's Mot.
at 00:33, 00:37-00:39; (3) dragging Officer B.M. into the
violent mob of rioters on the steps of the U.S. Capitol, *see*
Storyful Video, Ex. 1 to Gov't's Mot. at 00:15-00:20; Officer
A.W. BWC Footage, Ex. 2 to Gov't's Mot. at 00:41; Officer C.M.
BWC Footage, Ex. 3 to Gov't's Mot. at 00:41-00:45; and (4) later
kicking at officers in a second and separate confrontation with
law enforcement, *see* Surveillance Footage, Ex. 5 to Gov't's Mot.
at 00:14-00:16, 00:40-00:42; *see also Chrestman*, 2021 WL 765662,
at *8. Mr. Whitton's words are likewise extremely troubling and
reflective of the serious nature of his conduct and related
dangerousness: Mr. Whitton admitted that he "fed [Officer B.M.]
to the people" and was unconcerned about his status after the
attack, *s*ee Gov't's Reply, ECF No. 48 at 8-9; and he threatened
another set of officers during the second confrontation, telling
them, chillingly, "You're going to die tonight," *see* Officer

D.P. BWC Footage, Ex. 4 to Gov't's Mot. at 00:30-00:32.[6] In short, Mr. Whitton's actions and words on January 6 were violent and callous. And according to the government, they were among the most violent that occurred at the U.S. Capitol that day. *See* Gov't's Reply, ECF No. 48 at 8. His actions and words reflect a contempt for the rule of law and law enforcement, a disturbing disregard for the safety of others, and a willingness to engage in violence. These are qualities that bear on the seriousness of the offense conduct and the ultimate inquiry of whether Mr. Whitton will comply with conditions of release meant to ensure the safety of the community. *See Chrestman*, 2021 WL 765662, at *8.

The two remaining *Chrestman* factors are not strongly implicated in this case. Those factors are evidence of coordination with other rioters and evidence of prior planning. *See Chrestman*, 2021 WL 765662, at *7-*8. As Mr. Whitton points out, "[t]here is no evidence that [he] is part of any militia or militant group intent on overthrowing the government or harming government officials," Def.'s Opp'n, ECF No. 45 at 3; and the government has not presented evidence of any coordination with

---

[6] The Court notes that it was difficult to hear the utterance during the April 12, 2021 hearing; however, upon the Court's independent review of the BWC footage, the utterance "You're going to die tonight" was clear and appears to have been made by Mr. Whitton.

any other rioters. There is also no evidence that Mr. Whitton brought tactical gear to the U.S. Capitol, as other rioters, including his co-defendant Mr. Sabol, did. *See* Hr'g Tr., ECF No. 52 at 22:7-13. While the presence of these other factors would enhance the seriousness of the nature and circumstances of Mr. Whitton's already serious offense, they are not necessary to find that this Section 3142(g) factor weighs in favor of pretrial detention based on Mr. Whitton's danger to the community. In view of the many serious concerns raised by the other considerations outlined above, the Court is convinced that the nature and circumstances of Mr. Whitton's offenses indicate that he poses a danger to the community. *See Chrestman*, 2021 WL 765662, at *9.

Mr. Whitton's remaining arguments regarding the nature and circumstances of the offense charged are unconvincing: (1) even if the exact circumstances of the January 6 attacks are not "continuing in nature" or "likely to be repeated in the future," the violent offenses Mr. Whitton committed that day are serious enough on their own to militate against pretrial release under this first Section 3142(g) factor; and (2) Mr. Whitton's text message correspondence with associates after the January 6 attacks belie his claim that "[t]here is no evidence that Mr. Whitton has espoused violence against law enforcement on social

media, or in any other format, either before January 6, 2021 or
afterwards." *See* Def.'s Opp'n, ECF No. 45 at 3.

Accordingly, the first 18 U.S.C. § 3142(g) factor weighs
heavily in favor of detention on the basis that no condition or
combination of conditions will reasonably assure the safety of
the community. 18 U.S.C. § 3142(e)(1); 18 U.S.C. § 3142(g)(1).

### 2. **Weight of the Evidence Against the Defendant**

The second factor the Court must consider is the weight of
the evidence against Mr. Whitton. 18 U.S.C. § 3142(g)(2).

The government has proffered a substantial amount of
evidence that, at this stage, supports the charges against Mr.
Whitton and favors Mr. Whitton's detention pending trial. The
evidence presented to the Court at this point includes BWC video
footage from multiple MPD officers, video footage from publicly
available sources, U.S. Capitol surveillance images,
photographic evidence, and text messages between Mr. Whitton and
acquaintances regarding the January 6, 2021 events and Mr.
Whitton's state of mind. *See* Gov't's Mot., ECF No 35 at 4-15;
Gov't's Reply, ECF No. 48 at 2-6, 9-10.

The government describes the video evidence against Mr.
Whitton as "objective and unwavering," *see* Gov't's Reply, ECF
No. 48 at 9; and the Court agrees. The video evidence clearly
shows Mr. Whitton not only attacked MPD officers with a crutch,
but also that he was the first member of the mob on the lower

27

western terrace to drag an MPD officer from his post under the archway into the crowd, which kicked off terrifying assaults on both Officer B.M. and Officer A.W., resulting in injury to both. *See* Storyful Video Footage, Ex. 1 to Gov't's Mot., ECF No. 35; Officer A.W.'s Body Worn Camera ("BWC") Footage, Ex. 2 to Gov't's Mot., ECF No. 35; Officer C.M.'s BWC Footage, Ex. 3 to Gov't's Mot., ECF No. 35. Additional photographic evidence shows that Mr. Whitton participated in a second attack against law enforcement twenty minutes after the first. Gov't's Reply, ECF No. 48 at 2-3. A confidential informant and another witness have identified the individual seen in certain still photographs at the U.S. Capitol and a "Stop the Steal" rally the day before as Mr. Whitton. Gov't's Mot., ECF No. 35 at 11-14. And Mr. Whitton confirmed his participation in the events, including the brutal attack on Officer B.M., with text messages to an acquaintance wherein he: (1) displayed a bloodied hand and said he "fed" Officer B.M. "to the people"; (2) said he did not know Officer B.M.'s "status" and "d[id]n't care [to be honest]"; (3) said he did not go inside the U.S. Capitol "but everything else [he] was in the middle of"; (4) said that although he "didn't see weapons," he saw "organic sh**" among rioters "on our side"; and

(5) said he and other rioters "got wild." Gov't's Mot., ECF No.
35 at 13-14; Gov't's Reply, ECF No. 48 at 3-4.

Mr. Whitton has not presented any video or photographic
evidence that counters what has been proffered by the
government. His only arguments under this Section 3142(g) factor
are that it is "impossible to comment o[n] the weight of
evidence against Mr. Whitton" because counsel has only received
"limited discovery" from the government, and Mr. Whitton is
presumed innocent of the charges against him until there is a
conviction in this case. *See* Def.'s Opp'n, ECF No. 45 at 3.
Neither argument is persuasive for purposes of the instant
motion. First, Mr. Whitton has the same evidence the Court has,
which the Court just described. Having evaluated that evidence,
the Court finds that it is not "impossible to comment o[n]" its
weight, but rather it is quite possible to conclude, as Chief
Judge Howell did when confronted with a similar volume and
quality of evidence in *Chrestman*, that the weight of that
evidence is "overwhelming" and "strongly favors detention."
*Chrestman*, 2021 WL 765662, at *10. Second, Mr. Whitton's
argument that he is presumed innocent of the charges before he
is convicted is misplaced. The Court is not making a final
determination as to whether the evidence supports a conviction
beyond a reasonable doubt; rather, the Court is evaluating the
evidence—as all courts must do when determining whether a

defendant must be held in custody pending trial pursuant to 18 U.S.C. § 3142—to determine if clear and convincing evidence supports a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community were Mr. Whitton to be released pending trial. 18 U.S.C. § 3142(e)(1) and (g)(2). In consideration of weight of the evidence against Mr. Whitton, the Court finds that the second 18 U.S.C. § 3142(g) factor weighs against Mr. Whitton and in favor of his continued pretrial detention on the basis that no condition or combination of conditions will reasonably assure the safety of the community. *See Chrestman*, 2021 WL 765662, at *10.

### 3. The History and Characteristics of the Defendant

Under the third factor, the Court must consider Mr. Whitton's history and characteristics. 18 U.S.C. § 3142(g)(3). The Court considers Mr. Whitton's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," 18 U.S.C. § 3142(g)(3)(A); and "whether, at the time of the current offense or arrest, [Mr. Whitton] was on probation, on parole, or on other release, *id.* § 3142(g)(3)(B).

Here, there are factors to Mr. Whitton's credit, including the support he has received from friends and family and his employment history. Thirty-three individuals signed a form affidavit on Mr. Whitton's behalf, attesting that based on their personal knowledge of Mr. Whitton, he does not pose any risk of flight, failing to appear, committing a criminal offense, intimidating witnesses, or otherwise obstructing justice if released. *See* Character Letters, Ex. 1 to Def.'s Opp'n, ECF No. 45-1. The affiants also attested that the allegations against Mr. Whitton are "a complete shock" and "completely out of character for Mr. Whitton." *Id.* Nine of those individuals also wrote personalized letters. From those letters, the Court can gleam that Mr. Whitton's friends and family believe he is a hardworking man with a "high moral code," and his assaultive conduct on January 6 was surprising and out of character. *See, e.g.*, ECF No. 45-1 at 58. Mr. Whitton also points out that he "owns and operates a successful local business with over five employees," Def.'s Opp'n, ECF No. 45 at 4; and many of the individuals who wrote character letters emphasized his success in starting and growing his business and his dedicated to it, *see, e.g.*, ECF No. 45-1 at 5.

The Court also acknowledges that Mr. Whitton was willing to speak with law enforcement for nearly two months before his arrest. *See* Def.'s Opp'n, ECF No. 45 at 4. Mr. Whitton's

cooperation with law enforcement helps assuage the concerns
raised by Mr. Whitton's past criminal record about his ability
to comply with legal orders. *See* Gov't's Reply, ECF No. 48 at 10
n.1 (noting Mr. Whitton has a 2018 conviction for criminal
trespass and a 2020 conviction for driving with a suspended or
revoked license and driving without a license). But as was true
in *Chansley*, his "willingness to speak to law enforcement
officers . . . does not persuade the Court that he appreciates
the gravity of the allegations against him or that he will not
break the law again." 2021 WL 861079, at *13. In light of the
extreme disregard Mr. Whitton showed for the lives of law
enforcement on January 6, 2021, and his lack of remorse in a
later text-message conversation with an acquaintance, his
cooperation with law enforcement, while positive, does not
demonstrate that the character he displayed at the U.S. Capitol
was fleeting and no longer of concern. Furthermore, that the
government did not immediately arrest Mr. Whitton does not
affect the Court's detention analysis. Gov't's Reply, ECF No. 48
at 10-11 (citing *United States v. Little*, 235 F. Supp. 3d 272,
279 (D.D.C. 2017)).

Thus, while the Court credits Mr. Whitton for cooperating
with law enforcement and credits the character letters sent on
his behalf to the extent they speak to his relationships with
friends and family, and his professional life, the Court

ultimately concludes that the callous disregard Mr. Whitton displayed for the safety of others on January 6, 2021, and in text messages describing the events that transpired that day, speaks volumes about the danger he may pose to the community despite these other positive displays of character. Like Chief Judge Howell determined in *Chrestman* with respect to the history and characteristics of another violent Capitol Riot defendant, "the extent of [Mr. Whitton's] involvement in the mob clearly poses a danger." *Chrestman*, 2021 WL 765662, at *15. Like Mr. Chrestman, Mr. Whitton has not demonstrated any remorse for his actions. The Court is particularly troubled by Mr. Whitton's text message to an associate displaying his bloodied hand and stating he "fed him to the people" and he did not know or care about Officer B.M.'s condition following the violent attack. Gov't's Mot., ECF No. 35 at 13-14. That message suggests Mr. Whitton remained proud of his actions after the fact, and the Court finds that "there is no evidentiary basis to assume that defendant will refrain from similar activities, if instructed, in the future." *See Chrestman*, 2021 WL 765662, at *15.

For these reasons, the Court finds that the third Section 3142(g) factor also weighs against pretrial release on the basis that no condition or combination of conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(g). *See Chrestman*, 2021 WL 765662, at *15.

### 4. The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor the Court must consider is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

For many of the reasons already addressed above, the Court finds that this factor also weighs against Mr. Whitton and in favor of his continued pretrial detention. "Consideration of this factor encompasses much of the analysis set forth above, but it is broader in scope," requiring an "open-ended assessment of the 'seriousness' of the risk to public safety." *Cua*, 2021 WL 918255, at *5 (quoting *United States v. Taylor*, 289 F. Supp. 3d 55, (D.D.C. 2018)). "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure [the appearance of the person as required] and the safety of any other person and the community,' 18 U.S.C. § 3142(e), it bears heavily on the Court's analysis." *Id.*

As discussed in detail above, the nature and circumstances of Mr. Whitton's offenses evince a clear disregard for the safety of others and law enforcement in particular. *See supra* Section III, Part B.1; *see also Chrestman*, 2021 WL 765662, at *9. On January 6, 2021, Mr. Whitton's actions resulted in two MPD officers being wounded. Mr. Whitton not only participated in

the attacks; he instigated them and gave others an opportunity to commit further crimes. He also demonstrated an alarming lack of remorse for the violence he inflicted on Officer B.M. when he dragged him into a violent mob, later telling his acquaintance that he "fed [the officer] to the people." While the Court does acknowledge that Mr. Whitton has no violent criminal record, and that the character letters sent on Mr. Whitton's behalf suggest his friends and family believe he has a "strong moral code," that history and moral code did not prevent him from committing horrifying acts of violence, and they do little to dissuade the Court from finding that Mr. Whitton poses a serious danger to his community.

The Court reaches this conclusion having considered, as it did in Mr. Sabol's case and as it must here as well, whether the danger Mr. Whitton poses to the community is concrete and continuing. *See* Mem. Op., ECF No. 56 at 57-62; *see also Munchel*, 2021 WL 1149196, at *4. ("[A] defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety."). The Court disagrees with Mr. Whitton's contention that "there is nothing in [his] background or history to suggest that he's presently, today, . . . a danger to the community or to any

individual" and that his actions on January 6, 2021, do not render him ineligible for pretrial release in and of themselves. *See* Hr'g Tr., ECF No. 52 at 21:19-25. Mr. Whitton's and his co-defendant's conduct on January 6, 2021, was among some of the most violent conduct that took place that day, and the Court cannot ignore that reality when evaluating his character and the potential threat he continues to pose to the community. Nor has the D.C. Circuit said that Court must turn a blind eye to Mr. Whitton's violent conduct when determining whether he poses a danger that warrants pretrial detention to safeguard the community. *See Munchel*, 2021 WL 1149196, at *4 (observing that Capitol Riot defendants who acted violently are in a different category of dangerousness than those who did not, and only holding that for two defendants who did not engage in violence, the presence of the group at the U.S. Capitol on January 6, 2021, was critical to their ability to obstruct the vote and cause danger to the community).

While the certification of the 2020 Presidential Election is now complete, and President Biden has taken office, the Court is not convinced that dissatisfaction and concern about the legitimacy of the election results has dissipated for all Americans. Former President Donald J. Trump continues to make forceful public comments about the "stolen election," chastising individuals who did not reject the supposedly illegitimate

results that put the current administration in place. *See* Mark
Niquette, *Trump Rips Into Mitch McConnell in Speech to Party
Donors*, Bloomberg (Apr. 10, 2021),
https://www.bloomberg.com/news/articles/2021-04-10/trump-touts-
appeal-to-new-voters-as-path-for-gop-return-to-power (reporting
that former President Trump repeated false claims about the 2020
Presidential Election being stolen and criticized former Vice
President Michael R. Pence for not rejecting the certification
of the election results); David Jackson, *"Radical Left CRAZIES:"
Trump issues Easter greetings by attacking political rivals,
griping about election loss*, USA Today (Apr. 4, 2021) (reporting
on a written statement issued by former President Trump that
stated, "Happy Easter to ALL, including the Radical Left CRAZIES
who rigged our Presidential Election, and want to destroy our
Country!").[7] As was true in Mr. Sabol's case, such comments
reflect the continued threat posed by individuals like Mr.
Whitton, who has demonstrated that he is willing and able to
engage in extreme and terrifying levels of violence against law
enforcement with a chilling disregard for the rule of law and

---

[7] The Court takes judicial notice of the existence of news
articles. *See Washington Post v. Robinson*, 935 F.2d 282, 291
(D.C. Cir. 1991) ("[A] court may take judicial notice of the
existence of newspaper articles in the Washington, D.C., area
that publicized [certain facts]."); *Agee v. Muskie*, 629 F.2d 80,
81 n.1, 90 (D.C. Cir. 1980) (taking judicial notice of facts
generally known as a result of newspaper articles).

the lives of law enforcement, seemingly based on mistaken beliefs about the illegitimacy of the current administration. In this regard, Mr. Whitton, like Mr. Sabol, is distinguishable from other Capitol Riot defendants who displayed a dangerous distain for democracy and the rule of law on January 6, 2021, but who did not engage in violence, *see, e.g.*, *Munchel*, 2021 WL 1149196, at *8, or who did not direct their "forceful conduct" toward inflicting injury, *see United States v. Klein*, No. CR 21-236 (JDB), ECF No. 29 at 24 (D.D.C. Apr. 12, 2021).

In consideration of these factors and noting the D.C. Circuit's observation that "[i]t cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community," *Munchel*, 2021 WL 1149196, at *8; the Court is persuaded that Mr. Whitton poses a danger to his community and the broader community of American citizens if he were to be released pending trial, and he "cannot be trusted to abide by any conditions of release that might be imposed instead of pretrial detention." *Chrestman*, 2021 WL 765662, at *16.

## IV. Conclusion

After considering the factors set forth in 18 U.S.C. § 3142(g), the Court finds, by clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community were Mr. Whitton to be released pending trial. 18 U.S.C. § 3142(e)(1). Accordingly, the government's motion for revocation of Magistrate Judge Cannon's release order is **GRANTED**. Mr. Whitton shall be detained pending trial. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed: _____/s/_____
    **Emmet G. Sullivan**
    **United States District Judge**
    **April 20, 2021**